IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AMOREPACIFIC CORPORATION and INNISFREE CORPORATION, <br><br> Plaintiffs, <br><br> v. <br><br> THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A", <br><br> Defendants. | Case No. 24-cv-12417 |

# COMPLAINT

Plaintiffs Amorepacific Corporation and Innisfree Corporation (together, "Amorepacific" or "Plaintiff") hereby bring the present action against the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants") and allege as follows:

## I. JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive e-commerce stores[1] operating under the seller aliases identified in

---

[1] The e-commerce store URLs are listed on Schedule A hereto under the Online Marketplaces.

Schedule A attached hereto (the "Seller Aliases"). Specifically, Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and/or funds from U.S. bank accounts and, on information and belief, have sold products using infringing and counterfeit versions of Plaintiff's federally registered trademarks to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois.

## II. INTRODUCTION

3. This action has been filed by Plaintiff to combat e-commerce store operators who trade upon Plaintiff's reputation and goodwill by offering for sale and/or selling unauthorized and unlicensed products using infringing and counterfeit versions of federally registered trademarks owned by Plaintiff (the "Counterfeit Products"). Defendants create e-commerce stores operating under one or more Seller Aliases that are advertising, offering for sale, and selling Counterfeit Products to unknowing consumers. E-commerce stores operating under the Seller Aliases share unique identifiers, establishing a logical relationship between them and that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their counterfeiting operation. Plaintiff is forced to file this action to combat Defendants' counterfeiting of its trademarks, as well as to protect unknowing consumers from purchasing Counterfeit Products over the Internet. Plaintiff has been and continues to be irreparably damaged through

consumer confusion, dilution, and tarnishment of its valuable trademarks as a result of Defendants' actions and seeks injunctive and monetary relief.

## III. THE PARTIES

**Plaintiffs**

4. Plaintiff Amorepacific Corporation is a corporation organized under the laws of the Republic of Korea with its principal place of business at 100, Hangang-daero, Yongsan-Gu, Seoul, Republic of Korea, 04386.

5. Plaintiff Innisfree Corporation is a corporation organized under the laws of the Republic of Korea with its principal place of business at 100, Hangang-daero, Yongsan-Gu, Seoul, Republic of Korea, 04386.

6. Since its establishment in 1945, Amorepacific has been committed to becoming the "Asian Beauty Creator." What began as a small family-owned business is now one of the largest beauty and cosmetics companies in the world. Amorepacific operates over thirty highly recognizable beauty and personal care brands, including but not limited to, Amore Pacific, Laneige, Sulwhasoo and Innisfree (the "Amorepacific Brands").

7. Products sold under the Amorepacific Brands include cosmetics and skincare products, such as serums, moisturizers, hair care, and other beauty goods and treatments (collectively, the "Amorepacific Products"). The Amorepacific Products are among the highest rated Korean-beauty products and are known for seamlessly blending traditional Asian wisdom with modern science. Over the past several years, various Amorepacific Products have received accolades from the beauty and wellness industry. Amorepacific has also named several high-profile global brand ambassadors such as K-pop band aespa, K-pop superstar Rosé of the group BLACKPINK, and actress Tilda Swinton.

8. In 2023, Amorepacific received the Consumer Electronics Show 2024 (CES 2024) Innovation Award in the Digital Health category, marking the company's fifth consecutive CES Innovation Award. Amorepacific was likewise awarded the 'Market Trailblazer' accolade at the RE100 Leadership Awards, an award recognizing the efforts and achievements of companies leading the charge to transition to renewable energy. Finally, Amorepacific received nine awards at the iF Design Awards 2023 in four categories: product design, package design, communication, and exhibition design.

9. Amorepacific Products are distributed and sold to consumers throughout the United States, including Illinois, through authorized retailers, and the official websites for the Amorepacific Brands.

10. Plaintiff incorporates a variety of distinctive marks in the design of its various Amorepacific Products. As a result of long-standing use, strong common law trademark rights and goodwill have amassed in the Amorepacific trademarks. Plaintiff has also registered several of its trademarks with the United States Patent and Trademark Office, including the following registered marks which are referred to as the "AMOREPACIFIC Trademarks." The AMOREPACIFIC Trademarks are registered with the United States Patent and Trademark Office, a non-exclusive list of which is included below.

| Registration No. | Trademark |
|---|---|
| 5,778,235 | AMOREPACIFIC |
| 6,104,397 | AMOREPACIFIC |
| 4,810,560 | AMOREPACIFIC |
| 2,813,604 | AMOREPACIFIC |
| 7,070,761 | AP BY AMOREPACIFIC |

| | |
|---|---|
| 7,014,841 | Absolute Performance by AMOREPACIFIC |
| 5,557,788 | A MORE BEAUTIFUL WORLD AMOREPACIFIC |
| 3,109,775 | AMOREPACIFIC TIME RESPONSE |
| 5,882,313 | make up your Life AMOREPACIFIC |

| Registration | Mark |
|---|---|
| 5,624,970 | AMOREPACIFIC BIO-ENZYME REFINING COMPLEX Self-Activating Skin Polisher |
| 2,408,553<br>4,635,508<br>2,110,811<br>6,451,058<br>6,258,829 | LANEIGE |
| 4,801,638 | LANEIGE |
| 5,181,597<br>4,363,135 | LANEIGE |
| 6,077,311 | L LANEIGE |
| 6,646,179 | LANEIGE SKIN VEIL |
| 4,834,944 | LANEIGE MOISTURE WRAP |
| 6,473,638 | LANEIGE NEO CUSHION |
| 6,473,637 | LANEIGE NEO FOUNDATION |
| 6,891,571 | LANEIGE HUG FOR UNIVERSAL GOODNESS |
| 6,110,230 | LANEIGE RADIAN-C CREAM |
| 6,784,116 | LANEIGE PERFECT RENEW |
| 3,962,642 | SULWHASOO |

6

| | |
|---|---|
| 6,213,601 | 雪花秀 Sulwhasoo |
| 4,797,319 | 雪花秀 SULWHASOO |
| 6,350,802 | SULWHASOO ESSENTIAL COMFORT |
| 5,230,991 | SULWHASOO PERFECTING CUSHION |
| 7,220,702 | SULWHASOO THE ULTIMATE S |
| 7,307,403 | SULWHASOO MASTER COMPLEX |
| 5,020,028 | SULWHASOO MAKEUP BALANCER |
| 4,382,004 | SULWHASOO CAMELLIA HAIR OIL |
| 6,949,846　6,949,845　5,780,662 | INNISFREE |
| 6,263,499 | INNISFREE SIMPLE LABEL |
| 5,999,182 | innisfree |
| 4,619,591 | innisfree |
| 5,603,880 | INNISFREE |
| 4,690,493 | INNISFREE |
| 7,296,249 | innisfree |
| 6,882,059 | INNISFREE SKIN-LOVING, EARTH-CARING |

7



| | |
|---|---|
| 7,296,282 | |
| 6,430,647 | |
| 6,949,305 | |

11. The above U.S. registrations for the AMOREPACIFIC Trademarks are valid, subsisting, in full force and effect, and some are incontestable pursuant to 15 U.S.C. § 1065. The AMOREPACIFIC Trademarks have been used exclusively and continuously by Plaintiff for many years and have never been abandoned. The registrations for the AMOREPACIFIC Trademarks constitute *prima facie* evidence of their validity and of Plaintiff's exclusive right to use the AMOREPACIFIC Trademarks pursuant to 15 U.S.C. § 1057(b). Incontestable status under 15 U.S.C. § 1065 provides that the registrations for the AMOREPACIFIC Trademarks are conclusive evidence of the validity of the AMOREPACIFIC Trademarks and of the registrations of the AMOREPACIFIC Trademarks, of the ownership of the AMOREPACIFIC Trademarks, and of Plaintiff's exclusive right to use the AMOREPACIFIC Trademarks in commerce. 15 U.S.C. §§

1115(b), 1065. Attached hereto as **Exhibit 1** are true and correct copies of the United States Registration Certificates for the AMOREPACIFIC Trademarks included in the above table.

12. The AMOREPACIFIC Trademarks are exclusive to Plaintiff and are displayed extensively on Amorepacific Products and in Plaintiff's marketing and promotional materials. The Amorepacific Brands have been extensively promoted and advertised at great expense. In fact, over the years, Plaintiff, or third parties on Plaintiff's behalf, has expended millions of dollars in advertising, promoting, and marketing featuring the AMOREPACIFIC Trademarks, as well as significant time and resources. As a result, products bearing the AMOREPACIFIC Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being products sourced from Plaintiff.

13. The AMOREPACIFIC Trademarks are distinctive when applied to Amorepacific Products, signifying to the purchaser that the products come from Plaintiff and are manufactured to Plaintiff's quality standards. Whether Plaintiff manufactures the products itself or licenses others to do so, Plaintiff has ensured that products bearing the AMOREPACIFIC Trademarks are manufactured to the highest quality standards.

14. Plaintiff's innovative marketing and product designs, combined with the immense popularity of the Amorepacific Brands, have made the AMOREPACIFIC Trademarks famous marks. The widespread fame, outstanding reputation, and significant goodwill associated with the Amorepacific Brands have made the AMOREPACIFIC Trademarks invaluable assets of Plaintiff.

15. Plaintiff, or third parties on the Plaintiff's behalf, have expended substantial time, money, and other resources in developing, advertising and otherwise promoting the AMOREPACIFIC Trademarks. As a result, products bearing the AMOREPACIFIC Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being

high-quality products sourced from Plaintiff. Amorepacific Products have become among the most popular of their kind in the world.

**The Defendants**

16. Defendants are individuals and business entities of unknown makeup who own and/or operate one or more of the e-commerce stores under at least the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Plaintiff. On information and belief, Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions with lax trademark enforcement systems, or redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

17. On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Plaintiff to discover Defendants' true identities and the exact interworking of their network. If Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

### IV. DEFENDANTS' UNLAWFUL CONDUCT

18. The success of the Amorepacific Brands has resulted in significant counterfeiting of the AMOREPACIFIC Trademarks. Consequently, Plaintiff has a worldwide anti-counterfeiting program and regularly investigates suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers. In recent years, Plaintiff has identified many fully interactive, e-commerce stores offering Counterfeit Products on online marketplace platforms such as Amazon, eBay, AliExpress, Alibaba, Walmart, Wish.com, Etsy, DHgate,

Temu, and TikTok, including the e-commerce stores operating under the Seller Aliases. The Seller Aliases target consumers in this Judicial District and throughout the United States. According to a U.S. Customs and Border Protection (CBP) report, in 2021, CBP made over 27,000 seizures of goods with intellectual property rights (IPR) violations totaling over $3.3 billion, an increase of $2.0 billion from 2020.[2] Of the 27,000 in total IPR seizures, over 24,000 came through international mail and express courier services (as opposed to containers), most of which originated from China and Hong Kong.[3]

19. Third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms."[4] Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual store-fronts.[5] Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated.[6] Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters."[7]

---

[2] *See Intellectual Property Rights Seizure Statistics, Fiscal Year 2021*, U.S. Customs and Border Protection.
[3] *Id.*
[4] *See* Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); *see also* report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary.
[5] *Id.* at p. 22.
[6] *Id.* at p. 39.
[7] Chow, supra note 3, at p. 186-87.

20. Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and/or funds from U.S. bank accounts and, on information and belief, have sold Counterfeit Products to residents of Illinois.

21. Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases look sophisticated and accept payment in U.S. dollars and/or funds from U.S. bank accounts via credit cards, Alipay, Amazon Pay, and/or PayPal. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. Plaintiff has not licensed or authorized Defendants to use any of the AMOREPACIFIC Trademarks, and none of the Defendants are authorized retailers of Amorepacific Products.

22. Many Defendants also deceive unknowing consumers by using the AMOREPACIFIC Trademarks without authorization within the content, text, and/or meta tags of their e-commerce stores to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Amorepacific Products. Other e-commerce stores operating under the Seller Aliases omit using the AMOREPACIFIC Trademarks in the item title to evade enforcement efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Amorepacific Products.

23. E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading, and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

24. E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Counterfeit Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities and the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

25. Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share unique identifiers, such as templates with common design elements that intentionally omit any contact information or other information for identifying Defendants or other seller aliases they operate or use. E-commerce stores operating under the Seller Aliases include other notable common features, such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images. Additionally, Counterfeit Products for sale by the Seller Aliases bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Counterfeit Products were manufactured by and come from a common source and that Defendants are interrelated.

26. E-commerce store operators like Defendants are in constant communication with each other and regularly participate in QQ.com chat rooms and through websites such as

sellerdefense.cn and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

27. Counterfeiters such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation in spite of Plaintiff's enforcement. E-commerce store operators like Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Plaintiff. Indeed, analysis of financial account transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based financial accounts to off-shore accounts outside the jurisdiction of this Court.

28. Defendants are working to knowingly and willfully import, distribute, offer for sale, and sell Counterfeit Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Plaintiff, have knowingly and willfully used and continue to use the AMOREPACIFIC Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Products into the United States and Illinois over the Internet.

29. Defendants' unauthorized use of the AMOREPACIFIC Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Products, including the sale of Counterfeit Products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

30. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

31. This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered AMOREPACIFIC Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The AMOREPACIFIC Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from Amorepacific Products offered, sold, or marketed under the AMOREPACIFIC Trademarks.

32. Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the AMOREPACIFIC Trademarks without Plaintiff's permission.

33. Plaintiff is the exclusive owner of the AMOREPACIFIC Trademarks. The United States Registrations for the AMOREPACIFIC Trademarks (**Exhibit 1**) are in full force and effect. On information and belief, Defendants have knowledge of Plaintiff's rights in the AMOREPACIFIC Trademarks and are willfully infringing and intentionally using counterfeit versions of the AMOREPACIFIC Trademarks. Defendants' willful, intentional, and unauthorized use of the AMOREPACIFIC Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit Products among the general public.

34. Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

35. Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of the AMOREPACIFIC Trademarks.

36. The injuries and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit Products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

37. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

38. Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defendants' Counterfeit Products by Plaintiff.

39. By using the AMOREPACIFIC Trademarks in connection with the Counterfeit Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Products.

40. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

41. Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of the Amorepacific Brands.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a. using the AMOREPACIFIC Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine Amorepacific Product or is not authorized by Plaintiff to be sold in connection with the AMOREPACIFIC Trademarks;

   b. passing off, inducing, or enabling others to sell or pass off any product as a genuine Amorepacific Product or any other product produced by Plaintiff, that is not Plaintiff's or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under the AMOREPACIFIC Trademarks;

   c. committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

   d. further infringing the AMOREPACIFIC Trademarks and damaging Plaintiff's goodwill; and

   e. manufacturing, shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear any of Plaintiff's trademarks, including

the AMOREPACIFIC Trademarks, or any reproductions, counterfeit copies, or colorable imitations thereof;

2) Entry of an Order that, upon Plaintiff's request, those with notice of the injunction, including, without limitation, any online marketplace platforms such as eBay, AliExpress, Alibaba, Amazon, Walmart, Wish.com, Etsy, Temu, DHgate, and TikTok (collectively, the "Third Party Providers") shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the AMOREPACIFIC Trademarks;

3) That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the AMOREPACIFIC Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4) In the alternative, that Plaintiff be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the AMOREPACIFIC Trademarks;

5) That Plaintiff be awarded its reasonable attorneys' fees and costs; and

6) Award any and all other relief that this Court deems just and proper.

Dated this 3rd day of December 2024.      Respectfully submitted,

    <u>/s/ Justin R. Gaudio</u>
    Amy C. Ziegler
    Justin R. Gaudio
    Jennifer V. Nacht
    Thomas J. Juettner
    Greer, Burns & Crain, Ltd.
    200 West Madison Street, Suite 2100
    Chicago, Illinois 60606
    312.360.0080
    312.360.9315 (facsimile)
    aziegler@gbc.law
    jgaudio@gbc.law
    jnacht@gbc.law
    tjjuettner@gbc.law

    *Counsel for Plaintiffs Amorepacific Corporation and Innisfree Corporation*