**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| AMOREPACIFIC CORPORATION AND INNISFREE CORPORATION, <br><br> Plaintiffs, <br><br> v. <br><br> GUANGXI UTOPIA PACKAGING TECHNOLOGY CO., LTD., ET AL., <br><br> Defendants. | Case No. 24-cv-12417 <br><br> **Judge Lindsay C. Jenkins** <br><br> **Magistrate Judge Jeffrey Cole** |

**PLAINTIFF AMOREPACIFIC CORPORATION'S
MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR
<u>SUMMARY JUDGMENT AND AN AWARD OF STATUTORY DAMAGES</u>**

# TABLE OF CONTENTS

**TABLE OF CONTENTS** ............................................................................................................... ii

I.    BACKGROUND ................................................................................................................. 1

    A.   Amorepacific and the Laneige Brand ..................................................................... 1

    B.   Defendant's Counterfeit Product ............................................................................. 3

    C.   Procedural History .................................................................................................. 4

II.   PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ............................................. 5

    A.   Summary Judgment Standard ................................................................................. 5

    B.   Plaintiff Is Entitled to Summary Judgment Against Defendant on Its Trademark Infringement and Counterfeiting Claim .................................................................. 5

        i.    Plaintiff's LANEIGE Trademarks Are Federally Registered and Incontestable ............ 5

        ii.   Defendant Used Infringing and Counterfeit Reproductions of the LANEIGE Trademarks ................................................................................................................. 6

        iii.  Defendant's Use of the LANEIGE Trademarks Is Likely to Cause Confusion Among Consumers ................................................................................................................. 6

    C.   Plaintiff Is Entitled to Summary Judgment Against Defendant on Its False Designation of Origin Claim .................................................................................. 9

III.  PLAINTIFF IS ENTITLED TO A STATUTORY DAMAGES AWARD AGAINST DEFENDANT FOR TRADEMARK COUNTERFEITING .............................................. 9

    A.   The Value of the LANEIGE Trademarks and Plaintiff's Enforcement Efforts ................ 11

    B.   Defendant's Counterfeiting of the LANEIGE Trademarks Was Willful ......................... 12

    C.    Defendant Rendered it Impossible for Plaintiff to Determine the Scope of, or Prove, Actual Damages.................................................................................................................................. 13

    D.    Defendant's Wide Exposure Over the Internet Merits Statutory Damages Award .......... 14

    E.    The Statutory Damages Award Must Sufficiently Deter Defendant and Similar Online Sellers................................................................................................................................... 14

IV.    PLAINTIFF IS ENTITLED TO ATTORNEY FEES AND COSTS ............................... 15

V.    CONCLUSION................................................................................................................ 15

**MEMORANDUM**

Pursuant to Fed. R. Civ. P. 56, Plaintiff Amorepacific Corporation ("Plaintiff") submits this Memorandum in Support of its Motion for Summary Judgment on its trademark infringement and counterfeiting claim, its false designation of origin claim, an award of statutory damages on its trademark infringement and counterfeiting claim, and an award of attorney fees and costs against Defendant JUANHE Co.Ltd (Def. No. 54 on Schedule A) ("Defendant").

**I.     BACKGROUND**

**A.     Amorepacific and the Laneige Brand**

Established in 1945, Amorepacific is one of the largest beauty and cosmetics companies in the world. [Plaintiff's Local Rule 56.1 Statement of Material Facts in Support of its Motion for Summary Judgment ("PSF") 2]. Amorepacific operates over thirty highly recognizable beauty and personal care brands. [PSF 2]. One of the most popular Amorepacific brands is Laneige. [PSF 9]. In 2023 and 2024, Laneige was the top-selling lip treatment brand in the United States. [PSF 11]. Skin care products sold under the Laneige line include serums, gels, creams, moisturizers, sunscreens, toners, eye masks, lotions, and lip products (collectively, the "Laneige Products"). [PSF 9]. Laneige Products are sold through Plaintiff's website us.laneige.com, the official Laneige Amazon (amazon.com) storefront, and other licensed retailers including Sephora (sephora.com) and Sephora at Kohl's (kohls.com). [PSF 10]. Laneige lip products include lip serums, lip balms, lip treatments, and lip sleeping masks. [PSF 12]. Revenue from Amorepacific's premium products, which includes the Laneige Products, totaled over $118 million in the Americas region in 2024, a 112% increase from 2023. [PSF 13].

Laneige lip sleeping masks are one of the most popular beauty products in the United States. [PSF 14]. Laneige lip sleeping masks have gone viral on TikTok, hold a 4.6 rating on over 48,000 customer reviews on Amazon, and are beloved by celebrities including Kate Moss, Drew

1

Barrymore, Kendall Jenner, Kate Hudson, and Brooke Shields. [PSF 14]. In 2022, Laneige's lip sleeping mask was so popular New York Magazine named it "*the* beauty product of 2022." [PSF 15]. Laneige lip sleeping masks and kits routinely sell out of stock. [PSF 16]. Laneige lip sleeping have been sold on Plaintiff's Amazon storefront in a kit that includes four different flavors for $20. [PSF 17].

Laneige has partnered with numerous organizations and high-profile individuals to promote the Laneige Products. [PSF 18]. In 2024, Laneige partnered with Women's National Basketball Association (WNBA) team the Phoenix Mercury as their official skin-care partner and hosted a "multi-faceted activation" at the WNBA All-Star Game. [PSF 18]. Laneige has also named several high-profile brand ambassadors such as Sydney Sweeney, Alix Earle, Charlie XCX, and social media influencer Nara Smith. [PSF 18].

Plaintiff has registered many of its trademarks with the U.S. Patent and Trademark Office on the Principal Register, including, but not limited to, the below registrations (the "LANEIGE Trademarks"). [PSF 19].

| REGISTRATION NO. | TRADEMARK |
|---|---|
| 2,408,553 2,110,811 | LANEIGE |
| 4,801,638 | LANEIGE |
| 4,363,135 | LANEIGE |

The above U.S. registrations for the LANEIGE Trademarks are valid, subsisting, in full force and effect, and incontestable pursuant to 15 U.S.C. § 1065. [PSF 20]. The LANEIGE Trademarks have been used exclusively and continuously by Plaintiff and have never been abandoned. [PSF 21]. Laneige Products typically include one or more LANEIGE Trademarks. [PSF 22]. The LANEIGE Trademarks are used to advertise, promote, and market Laneige

2

Products. [PSF 22]. Plaintiff has spent substantial time, money, and other resources in developing, advertising, and otherwise promoting the LANEIGE Trademarks and Laneige Products. [PSF 23]. For example, in 2024, Plaintiff partnered with Sephora and launched a Times Square takeover advertising campaign that took over Times Square and the nearby Sephora location and subway station in New York City. [PSF 23].

### B. Defendant's Counterfeit Product

Defendant is a Chinese entity that operates an e-commerce store on Walmart.com ("Walmart") under the seller alias identified as JUANHE Co.Ltd. [PSF 3]. Defendant advertised, offered for sale, and sold lip sleeping mask kits using the LANEIGE Trademarks (the "Counterfeit Product") on its Walmart store. [PSF 24]. The Counterfeit Product is a lip sleeping mask kit that includes four different flavors and is offered for sale and sold for $7.69. [PSF 24]. The product listing of Defendant's Counterfeit Product includes images with multiple infringing and counterfeit reproductions of the LANEIGE Trademarks. Figures 1, 2; [PSF 24-26].




*Figure 1*  *Figure 2*

Plaintiff reviewed the product listing for the Counterfeit Product, and determined Defendant infringed Plaintiff's LANEIGE Trademarks. [PSF 32]. Plaintiff has not licensed or

3

authorized Defendant to use the LANEIGE Trademarks, and Defendant is not an authorized retailer of genuine Laneige Products. [PSF 21, 35]. On September 25, 2024, Plaintiff's investigators ordered the Counterfeit Product from Defendant, entered an Illinois address (which was Plaintiff's counsel's address) as the shipping address, and paid for the Counterfeit Product. [PSF 33]. Plaintiff's investigators received an order confirmation (Order No. 2000123-11599551) and subsequent e-mails confirming that the Counterfeit Product had shipped to Illinois. [PSF 34].

During discovery, Defendant produced screenshots indicating that between March 5, 2022, and March 11, 2025, Defendant sold and accepted money for 29 units of Counterfeit Product for a revenue of $222.99. [PSF 40]. However, Defendant did not indicate whether those were the totality of Defendant's sales of the Counterfeit Product. [PSF 40]. The screenshots also did not indicate the identity or location of the purchasers, the shipping addresses, the status of the sales, or the status of the deliveries. [PSF 40]. Further, the screenshots were only indicative of sales of one product (ID 6573170859); Defendant did not complete a search for other products that infringe the LANEIGE Trademarks or provide Plaintiff a list of its other products that would allow Plaintiff to investigate whether those products infringe the LANEIGE Trademarks. [PSF 41]. Defendant also did not provide an accounting for funds restrained in its Walmart account. [PSF 42].

### C.   Procedural History

Plaintiff filed this action on December 3, 2024 [1]. On December 9, 2024, the Court entered a Temporary Restraining Order ("TRO")[1] that, among other things, enjoined Defendant from infringing the LANEIGE Trademarks, and ordered Walmart to provide expedited discovery regarding Defendant's contact information and sales and restrain funds in Defendant's Walmart account. [22] at ¶¶ 1-2, 4-5. On December 13, 2024, pursuant to the TRO [22], Walmart provided

---

[1] The Court entered a Preliminary Injunction extending the relief granted in the TRO for the pendency of this action. [40].

4

Defendant's contact information, that the balance of Defendant's Walmart account was $35,653.69, and confirmed that the account had been restrained. [PSF 36].

## II. PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT

### A. Summary Judgment Standard

A district "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party bears the initial burden of demonstrating that these requirements have been met; it may discharge this responsibility by showing 'that there is an absence of evidence to support the non-moving party's case.'" *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008).

### B. Plaintiff Is Entitled to Summary Judgment Against Defendant on Its Trademark Infringement and Counterfeiting Claim

A defendant is liable for trademark infringement and counterfeiting under the Lanham Act when it, "without the consent of the registrant[,] use[s] in commerce, any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods ... on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a). To prevail on a trademark infringement claim, "a plaintiff must be able to show (1) that its mark is protectable, and (2) that the defendant's use of that mark is likely to cause confusion among consumers." *Phx. Entm't, LLC v. Rumsey*, 829 F.3d 817, 822 (7th Cir. 2016) (internal citation omitted).

i. Plaintiff's LANEIGE Trademarks Are Federally Registered and Incontestable

The LANEIGE Trademarks are registered with the United States Patent and Trademark Office on the Principal Register. [PSF 19]. The registrations for the LANEIGE Trademarks are valid, subsisting, in full force and effect, and incontestable pursuant to 15 U.S.C. § 1065. [PSF 20]. Incontestable status under 15 U.S.C. § 1065 means the registrations for the LANEIGE

5

Trademarks are conclusive evidence of the registration and validity of the LANEIGE Trademarks, Plaintiff's ownership of the LANEIGE Trademarks, and Plaintiff's exclusive right to use the LANEIGE Trademarks in commerce. 15 U.S.C. §§ 1115(b); 1065. *See Park'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 83 L. Ed. 2d 582, 105 S. Ct. 658 (1985). As such, Plaintiff satisfies the first element of its claim.

      ii. <u>Defendant Used Infringing and Counterfeit Reproductions of the LANEIGE Trademarks</u>

Trademark infringement amounts to counterfeiting when an infringer's violation consists of: (1) using a "spurious mark which is identical with, or substantially indistinguishable from, a registered mark,"[2] (2) in connection with the same goods referenced in the registration certificate. *See* 15 U.S.C. §§ 1116(d)(1)(B), 1117(b)-(c), 1127. Here, Defendant advertised, offered for sale, and sold lip sleeping mask kits using a mark that was identical to, or substantially indistinguishable from, the LANEIGE Trademarks. *See* Figure 1, Figure 2, *supra*. [PSF 24-26]. Lip sleeping masks are the same goods referenced in the LANEIGE Trademarks registration certificates. *See* [PSF 19]. As such, Defendant's trademark infringement amounts to counterfeiting within the meaning of 15 U.S.C. § 1127.

      iii. <u>Defendant's Use of the LANEIGE Trademarks Is Likely to Cause Confusion Among Consumers</u>

As to the second element of Plaintiff's trademark infringement claim, the question of whether a defendant's use will cause a likelihood of confusion "may be resolved on summary judgment 'if the evidence is so one-sided that there can be no doubt about how the question should be answered.'" *CAE, Inc. v. Clean Air Eng'g, Inc*., 267 F.3d 660, 677 (7th Cir. 2001).

---

[2] *See* Joint Statement on Trademark Counterfeiting Legislation, 130 Cong. Rec. H12076, H12078 ("Spurious" means "not genuine or authentic").

Under Seventh Circuit precedent, when "one produces counterfeit goods in an apparent attempt to capitalize upon the popularity of, and demand for, another's product, there is a presumption of a likelihood of confusion." *Microsoft Corp. v. Rechanik*, 249 F. App'x 476, 479 (7th Cir. 2007). Defendant used marks that were identical to, or indistinguishable from, the LANEIGE Trademarks to capitalize on the popularity and success of the highly popular and lucrative Laneige lip sleeping masks. *See* Figure 1, Figure 2, *supra*. [PSF 13-16, 18, 24-26]. As such, there is a presumption that Defendant's unauthorized use of the LANEIGE Trademarks is likely to cause confusion among consumers.

The result is the same when considered in light of the Seventh Circuit's seven factors to determine whether there is a likelihood of confusion, which include: (1) the similarity between the marks in appearance and suggestion; (2) the similarity of the products; (3) the area and manner of concurrent use; (4) the degree and care likely to be exercised by consumers; (5) the strength of the plaintiff's mark; (6) any actual confusion; and, (7) the intent of the defendant to "palm off" its products as that of another. *AutoZone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir. 2008).

Defendant advertised, offered for sale, and sold its Counterfeit Product (lip sleeping mask kit) using marks identical to the LANEIGE Trademarks. Figure 1, Figure 2, *supra*; [PSF 24-26]. Consumers who encounter Defendant's Counterfeit Product are likely to believe that it is associated with the Laneige brand and are further likely to believe that the Counterfeit Products are genuine Laneige Products. *See AutoZone,* F.3d at 929; *see Sorensen v. WD-40 Co.*, 792 F.3d 712, 728-29 (7th Cir. 2015). Thus, the first and second factors favor Plaintiff.

Regarding the third factor, courts consider "whether the parties use the same channels of commerce, target the same general audience, or use similar marketing procedures." *Sorensen*, 792 F.3d at 730. As to the fourth factor, the general rule is that "the more widely accessible and

7

inexpensive the products . . . the more likely that consumers will exercise a lesser degree of care and discrimination in their purchases." *AutoZone*, 543 F.3d at 933 (quoting *CAE*, F.3d at 683). Here, Defendant sells its Counterfeit Product through Walmart, an online retailer, and Plaintiff sells Laneige Products, including lip sleeping masks and lip sleeping mask kits, through online retailers including Amazon, Sephora, and Kohl's. [PSF 10, 24]. The Counterfeit Product is offered for sale and sold for $7.69, and a substantially identical looking, genuine Laneige Product has been sold on Amazon for $20.00. [PSF 17, 24]. Because both Plaintiff and Defendant sell their products through online retailers for a low price, the third and fourth factors also favor Plaintiff. *See Entm't One*, 384 F. Supp. 3d at 951 (finding that "[b]ecause [Plaintiff's and Defendant's] products were widely accessible for anyone to purchase on eBay, and sold at a low price point, this factor weighs in Plaintiff's favor").

As to the fifth factor, the LANEIGE Trademarks are famous marks and have been used in commerce in the United States, and all over the world, for over twenty years. *See* [PSF 19]. Plaintiff has expended substantial time, money, and other resources in developing, advertising and otherwise promoting the LANEIGE Trademarks. [PSF 23]. Laneige Products bearing the LANEIGE Trademarks, including the Laneige lip sleeping masks, have received extensive unsolicited publicity. [PSF 11-16]. *See Coach, Inc. v. Treasure Box, Inc.*, No. 3:11 CV 468, 2013 U.S. Dist. LEXIS 76607, at *19 (N.D. Ind. May 31, 2013) ("Coach has established that its Marks are strong, as evidenced by the millions of dollars that it spends annually in advertising, marketing, and promoting its goods bearing the marks; the billions of dollars in annual revenue from sales of goods bearing the Coach Marks; and the understanding that the purchasing public has that the Coach Marks signify Coach goods"). The fifth factor weighs in Plaintiff's favor.

Plaintiff does not need to prove actual consumer confusion; rather it only needs to show a likelihood of confusion exists, particularly given the compelling evidence that the Defendant is attempting to "palm off" its products as being genuine Laneige Products. *CAE*, 267 F.3d at 685. Further, the Court may infer Defendant's intent to confuse consumers "from the similarity of the marks where the senior mark has attained great notoriety." *AutoZone*, 543 F.3d at 934. Here, Defendant's intent to "palm off" its Counterfeit Product as a genuine Laneige lip sleeping mask is obvious based on Defendant's use of substantially similar, if not identical, versions of the LANEIGE Trademarks in the product listing of the Counterfeit Product.

In sum, the undisputed material facts are "so one-sided that there can be no doubt" that all of the likelihood of confusion factors favor Plaintiff. *CAE,* 267 F.3d at 677. Therefore, Plaintiff is entitled to summary judgment on its trademark infringement and counterfeiting claim as a matter of law.

    **C.**    **Plaintiff Is Entitled to Summary Judgment Against Defendant on Its False Designation of Origin Claim**

The test for trademark infringement under 15 U.S.C. § 1114(1) and 15 U.S.C. § 1125(a) are the same. *CAE,* 267 F.3d at 673-74. Since Plaintiff has established it is entitled to summary judgment on its trademark infringement and counterfeiting claim (Count I), it is also entitled to summary judgment on its false designation of origin claim (Count II).

**III.**    **PLAINTIFF IS ENTITLED TO A STATUTORY DAMAGES AWARD AGAINST DEFENDANT FOR TRADEMARK COUNTERFEITING**

Plaintiff seeks to recover an award of statutory damages of $150,000 as authorized by 15 U.S.C. § 1117(c) for Defendant's advertising, offering for sale, and sale of Counterfeit Products.[3] A plaintiff in a counterfeiting case may elect to receive "not less than $1,000 or more than

---

[3] Pursuant to 17 U.S.C. § 1117(d), Plaintiff may, "at any time before final judgment is rendered" elect to recover an award of statutory damages, instead of actual damages and profits.

$200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(1). When the counterfeiting is willful, plaintiff may receive up to $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed. 15 U.S.C. § 1117(c)(2). The amount sought is reasonable in light of the relevant factors, including: (1) the value of the LANEIGE Trademarks and Plaintiff's efforts to promote and enforce the LANEIGE Trademarks, (2) Defendant's willfulness, (3) Plaintiff's inability to prove actual damages, (4) Defendant's wide exposure over the Internet; (5) deterrence of Defendant; and (6) deterrence of similar online e-commerce sellers.

Statutory damages under 15 U.S.C. § 1117(c) are a "matter within the sole province of the court." *Tobinick v. Scripps Clinic Med. Group*, 81 Fed. Appx. 677, 679 (9th Cir. 2003). Courts interpreting 15 U.S.C. § 1117(c) have analogized case law applying the statutory damage provision of the Copyright Act contained in 17 U.S.C. § 504(c). *See Lorillard Tobacco Co. v. S&M Cent. Serv. Corp.*, 2004 U.S. Dist. LEXIS 22563, at *10 (N.D. Ill. Nov. 5, 2004). The Seventh Circuit's standard for awarding statutory damages for copyright infringement under 17 U.S.C. § 504(c) is articulated in *Chi-Boy Music v. Charlie Club*, 930 F.2d 1224, 1229 (7th Cir. 1991). Under the *Chi-Boy* standard, a court awarding statutory damages "enjoys wide discretion." *Id*. In computing the award amount, a court may consider factors such as "the difficulty or impossibility of proving actual damages, the circumstances of the infringement, and the efficacy of the damages as a deterrent." *Id*. Courts in this District have also considered the significant value of a plaintiff's brand and the efforts taken to protect, promote, and enhance that brand in determining the appropriate dollar figure for the award. *Lorillard Tobacco Co.*, 2004 U.S. Dist. LEXIS 22563, at *16.

10

An award of statutory damages serves dual interests in that it is remedial in nature but also intended to protect an important public interest. *Sands, Taylor & Wood v. Quaker Oats Co.,* 34 F.3d 1340, 1347-48 (7th Cir. 1994). Thus, courts have looked beyond restitution of profit and restoration of injury to award damages, holding that deterrence of future infringement by the Defendant and others situated like him is an important factor. *Lorillard Tobacco Co. v. J.J. Shell Food Mart, Inc.*, 2005 U.S. Dist. LEXIS 26626, at *16 (N.D. Ill. Oct. 27, 2005). Courts have also held that damages awards limited to lost profits would have little to no deterrent effect on future violations – an infringer "must fear more than just having to turn over his ill-gotten gains to the rightful owners." *See Lorillard Tobacco Co.,* 2004 U.S. Dist. LEXIS 22563, at *17. Given the broader economic losses and harm to the job market caused by infringement, coupled with the possible dangers to consumers who are tricked into purchasing low quality, infringing products over the Internet, it is important to both penalize defendant and deter future violations. *Id.* at *18.

### A. The Value of the LANEIGE Trademarks and Plaintiff's Enforcement Efforts

In determining an appropriate damage award, this Court should be guided by the *Lorillard* case and consider the "significant value of [the Laneige] brand and the efforts taken to protect, promote, and enhance that brand." *Lorillard Tobacco Co.*, 2004 U.S. Dist. LEXIS 22563, at *16. Plaintiff has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the LANEIGE Trademarks and Laneige Products. [PSF 23]. Because the success of the Laneige brand has resulted in significant counterfeiting of the LANEIGE Trademarks, Plaintiff has a worldwide anti-counterfeiting program to protect the Laneige brand. *See* [PSF 29-31]. Plaintiff has continuously and actively enforced its trademark rights, including filing trademark infringement and counterfeiting lawsuits. [PSF 30]. The requested statutory damages award should be given favorable consideration in view of the value of the LANEIGE Trademarks, and the extensive steps taken by Plaintiff to protect, promote and enhance the

11

LANEIGE Trademarks and the Laneige brand. *See Monster Energy Co. v. Meng Chun Jing*, No. 15 C 277, 2015 U.S. Dist. LEXIS 86956, at *11 (N.D. Ill. July 6, 2015).

### B. Defendant's Counterfeiting of the LANEIGE Trademarks Was Willful

Defendant's counterfeiting was willful and, therefore, at a minimum, warrants the requested statutory damages award. *See H-D U.S.A., LLC v. Guangzhou Tomas Crafts Co.,* No. 16-cv-10096, 2017 U.S. Dist. LEXIS 207613, at *13 (N.D. Ill. Dec. 18, 2017). "Infringement is willful when the infringer knows that it is infringing or acts 'in reckless disregard'" of that possibility." *H-D U.S.A., LLC v. SunFrog, LLC*, 311 F. Supp. 3d 1000, 1045 (E.D. Wis. 2018) (citing *Wildlife Exp. Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 511, 514 (7th Cir. 1994)). Knowledge or reckless disregard need not be proven directly but can be inferred. *Id.*

The Court can infer from Defendant's conduct that it had knowledge that its conduct constituted infringement. The Laneige Products are widely recognized, internationally popular, and readily accessible to the public over the internet, and the marks Defendant used are identical to the LANEIGE Trademarks. *See* Figure 1, Figure 2, *supra*. [PSF 11-16, 18, 24-26]. At the very least, Defendant was acting with willful blindness and a reckless disregard of Plaintiff's trademark rights when it advertised, offered to sell, and sold the Counterfeit Products using counterfeit reproductions of the LANEIGE Trademarks. *See Luxottica Grp. S.p.A. v. Chen*, 2017 U.S. Dist. LEXIS 29999, at *6 (N.D. Ill. Mar. 2, 2017).

As such, Defendant's counterfeiting of the LANEIGE Trademarks had to be willful, because Defendant either had knowledge that its conduct constituted infringement, or at a minimum, showed a reckless disregard for Plaintiffs' trademark rights.

### C. Defendant Rendered it Impossible for Plaintiff to Determine the Scope of, or Prove, Actual Damages

Congress added 15 U.S.C. § 1117(c), the statutory damages provision, "because proving actual damages in counterfeiting cases is 'extremely difficult if not impossible.'" *Deckers Outdoor Corp. v. Australian Leather Pty*, No. 16 CV 3676, 2020 U.S. Dist. LEXIS 150474, at *12-13 (N.D. Ill. July 13, 2020) (quoting *Louis Vuitton Malletier S.A. v. LY USA, Inc*., 676 F.3d 83, 110 n.27 (2d Cir. 2012) (quoting S. Rep. No. 104-177, at 10 (1995)). This is because "a counterfeiter might hide, alter or destroy records, thus making it impossible for a plaintiff to determine the scope of, or be able to prove, actual damages." *Lorillard Tobacco Co.*, 2004 U.S. Dist. LEXIS 22563, at *10 (citations omitted).

During discovery, Defendant provided Plaintiff with deficient responses and minimal document production, despite Plaintiff agreeing to extend the fact discovery deadline. [PSF 43]. In total, Defendant provided Plaintiff with 15 pages of document production, of which 6 pages consisted of the screenshot evidence originally filed as Plaintiff's Exhibit 2 to the Declaration of Giovanni Valentini [16]. [PSF 39]. The evidence Defendant did provide Plaintiff showed that it sold and accepted money for 29 units of Counterfeit Product for a revenue of $222.99. [PSF 40]. However, Defendant did not indicate whether those were the totality of Defendant's sales of the Counterfeit Product, provide an accounting for funds restrained in its Walmart account, complete a search for other products that infringe the LANEIGE Trademarks, or provide Plaintiff a list of its other products that would allow Plaintiff to investigate whether Defendant's other products infringe the LANEIGE Trademarks. [PSF 40-42]. Defendant rendered it impossible for Plaintiff to prove the scope of Defendant's infringement and actual damages; as such, Plaintiff should be entitled to the requested statutory damage award.

13

### D. Defendant's Wide Exposure Over the Internet Merits Statutory Damages Award

Defendant's ability to reach a vast customer base by advertising, offering for sale, and selling Counterfeit Products over the Internet through its Walmart store further merits the requested statutory damages award. Defendant reaches an enormous audience by selling its Counterfeit Product through Walmart; in 2024, Walmart reported its e-commerce sales surpassed $100 billion. [PSF 44]. Courts in this District have recognized the ability for e-commerce stores to reach a vast customer base and factored in this wide market exposure when calculating statutory damages. *See H-D U.S.A., LLC*, 2017 U.S. Dist. LEXIS 207613, at *11 ("the fact that defendant's counterfeiting took place online favors a higher statutory damages award because online counterfeiting can reach a much wider audience than counterfeiting through a physical store").

### E. The Statutory Damages Award Must Sufficiently Deter Defendant and Similar Online Sellers

The remedy imposed must provide a sufficient deterrent effect to ensure that the guilty party will not engage in further infringing conduct. *Sands, Taylor & Wood,* 34 F.3d at 1348. Defendant has been named previously in another infringement case before this Court.[4] [PSF 5]. Thus, there is a substantial need to award a damages award large enough to deter Defendant from again engaging in infringing and counterfeiting behavior. Similarly, there is a substantial need to deter other online sellers from engaging in infringing and counterfeiting conduct. According to the Fiscal Year 2021 U.S. Customs and Border Protection ("CBP") Intellectual Property Seizure Statistics Report, CBP made over 27,000 seizures of goods with intellectual property rights violations totaling over $3.3 billion, an increase of $2.0 billion from 2020. [PSF 45].

---

[4] Defendant was named as a defendant, under the seller alias as JUANHE Co.Ltd, in *Yiwu Baimei Elec. Com. Co., Ltd., a Chinese Ltd. Corp. v. The P'ships et. al* (N.D. Ill. 24-cv-11216) (Jenkins, J.), where Defendant was accused of copyright infringement.

14

IV. **PLAINTIFF IS ENTITLED TO ATTORNEY FEES AND COSTS**

The Lanham Act authorizes courts to, "in exceptional cases . . . award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). The Seventh Circuit has said that "[d]istrict courts should use the broad equitable powers afforded them under § 1117(a)" to "properly serve[] the statute's goals of enforcing the trademark laws." *Te-Ta-Ma Truth Found.-Family of URI, Inc. v. World Church of the Creator*, 392 F.3d 248, 264-65 (7th Cir. 2004). Courts consider "the totality of the circumstances" and in particular consider the losing party's "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Curry v. Revolution Labs., LLC*, No. 17 C 2283, 2024 U.S. Dist. LEXIS 114989, at *6-*7 (N.D. Ill. June 30, 2024).

Defendant willfully infringed the LANEIGE Trademarks. Defendant is also a known infringer, thus there is a compelling interest in awarding statutory damages to deter Defendant from engaging in infringing conduct again. There is a similar and equally compelling interest in deterring other online e-commerce infringers and counterfeiters as well. Finally, Defendant intended to palm off its Counterfeit Product as a genuine Laneige Product. For these reasons, this case is an exceptional one under the meaning of 15 U.S.C. § 1117(a), and Plaintiff respectfully requests the Court award Plaintiff attorney fees and costs.

V. **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that this Court enter an order granting summary judgment against Defendant for federal trademark infringement and counterfeiting (Count I) and false designation of origin (Count II). Plaintiff further requests the Court award Plaintiff $150,000 in statutory damages. Plaintiff also respectfully requests an award of attorney fees and costs associated with this action.

Dated this 21st day of April 2025.

Respectfully submitted,

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Jennifer V. Nacht
Thomas J. Juettner
Greer, Burns & Crain, Ltd.
200 West Madison Street, Suite 2100
Chicago, Illinois 60606
312.360.0080 / 312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
jnacht@gbc.law
tjjuettner@gbc.law

*Counsel for Plaintiffs*
*Amorepacific Corporation and*
*Innisfree Corporation*