IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AMOREPACIFIC CORPORATION AND INNISFREE CORPORATION,<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>GUANGXI UTOPIA PACKAGING TECHNOLOGY CO., LTD., ET AL.,<br><br>　　　　　Defendants. | Case No. 24-cv-12417<br><br>**Judge Lindsay C. Jenkins**<br><br>**Magistrate Judge Jeffrey Cole** |

**PLAINTIFF AMOREPACIFIC CORPORATION'S LOCAL RULE 56.1 STATEMENT OF MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Pursuant to Local Rule 56.1(a)(2), Plaintiff Amorepacific Corporation ("Plaintiff") submits this Statement of Material Facts in Support of the Motion for Summary Judgment against JUANHE Co.Ltd (Def. No. 54 on Schedule A) ("Defendant") (the "Motion").

**UNDISPUTED MATERIAL FACTS**

**Parties, Jurisdiction, and Venue**

1.　　Plaintiff Amorepacific Corporation is a corporation organized under the laws of the Republic of Korea with its principal place of business at 100, Hangang-daero, Yongsan-Gu, Seoul, Republic of Korea, 04386. Declaration of Giovanni Valentini (the "Valentini Decl.") at ¶ 3.

2.　　Established in 1945, Amorepacific is one of the largest beauty and cosmetics companies in the world. Amorepacific operates over thirty highly recognizable beauty and personal care brands. Valentini Decl. at ¶ 4.

3.　　Defendant is a Chinese entity that operates an e-commerce store on Walmart.com ("Walmart") under the seller alias identified as JUANHE Co.Ltd. [41] at ¶¶ 2, 16; [16-1] at pp.

188-191. Screenshots of Defendant's Walmart e-commerce store are attached to the Valentini Decl. as **Exhibit 11** and the Declaration of Jennifer V. Nacht (the "Nacht Decl.") as **Exhibit 1**.

4. Defendant conducts business throughout the United States, including within the State of Illinois and this Judicial District, through the operation of at least its fully interactive e-commerce store on Walmart. [16-1] at pp. 188-191; Nacht Decl. at ¶¶ 2-3; **Exhibit 1** to the Nacht Decl.; **Exhibit 2** to the Nacht Decl.; *see* [41] at ¶ 2.

5. Defendant was named as a defendant, under the seller alias as JUANHE Co.Ltd, in *Yiwu Baimei Elec. Com. Co., Ltd., a Chinese Ltd. Corp. v. The P'ships et. al* (N.D. Ill. 24-cv-11216) (Jenkins, J.) ("Case No. 24-cv-11216"). In Case No. 24-cv-11216, Defendant was accused of copyright infringement. Nacht Decl. at ¶ 12.

6. Defendant targets the United States, including Illinois residents, by advertising, offering for sale, and selling an infringing and counterfeit product, lip sleeping mask kits, using Plaintiff's federally registered trademarks on the Walmart.com e-commerce platform without authorization from Plaintiff. [16-1] at pp. 188-191; Nacht Decl. at ¶¶ 2-3; **Exhibit 1** to the Nacht Decl.; **Exhibit 2** to the Nacht Decl.; Valentini Decl. at ¶¶ 18, 20; *see* [41] at ¶ 2.

7. Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)-(b), and 28 U.S.C. § 1331. [1] at ¶¶ 1, 31-36, 38-41; [41] at ¶ 1.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendant because Defendant directly targets business activities toward consumers in Illinois and causes harm to Plaintiff's business within this Judicial District. [1] at ¶¶ 2, 31-36, 38-41; [16-1] at pp. 188-191; Nacht Decl. at ¶¶ 2-3; **Exhibit 1** to the Nacht Decl.; **Exhibit 2** to the Nacht Decl.; [15] at ¶¶ 25-29; *see* Valentini Decl. at ¶¶ 23-25.

**The Laneige Brand**

9. One of the most popular Amorepacific brands is Laneige. Skin care products sold under the Laneige line include serums, gels, creams, moisturizers, sunscreens, toners, eye masks, lotions, and lip products (collectively, the "Laneige Products"). Valentini Decl. at ¶ 5.

10. Genuine Laneige Products are sold through Plaintiff's website us.laneige.com, the official Laneige Amazon (amazon.com) storefront, and other licensed retailers including Sephora (sephora.com) and Sephora at Kohl's (kohls.com). Valentini Decl. at ¶ 6; *See* **Exhibit 1** to the Valentini Decl., *See* **Exhibit 2** to the Valentini Decl., *See* **Exhibit 3** to the Valentini Decl.

11. In 2023 and 2024, Laneige was the top-selling lip treatment brand in the United States. Valentini Decl. at ¶ 7.

12. Laneige lip products include lip serums, lip balms, lip treatments, and lip sleeping masks. Valentini Decl. at ¶ 8.

13. Revenue from Amorepacific's premium products, which includes the Laneige Products, totaled over $118 million in the Americas region in 2024, a 112% increase from 2023. Valentini Decl. at ¶ 9.

14. Laneige lip sleeping masks are one of the most popular beauty products in the United States. Laneige lip sleeping masks have gone viral on TikTok, hold a 4.6 rating on over 48,000 customer reviews on Amazon, and are beloved by celebrities including Kate Moss, Drew Barrymore, Kendall Jenner, Kate Hudson, and Brooke Shields. Valentini Decl. at ¶ 10.

15. In 2022, Laneige's lip sleeping mask was so popular New York Magazine named it "*the* beauty product of 2022." Valentini Decl. at ¶ 11.

16. Laneige lip sleeping masks and kits routinely sell out of stock. Valentini Decl. at ¶ 12.

17. Laneige lip sleeping masks have been sold on Plaintiff's Amazon storefront in a kit that includes four different flavors for $20, as shown in Figure 1 below. Valentini Decl. at ¶ 13, *See* **Exhibit 1** to the Valentini Decl.



*Figure 1*

18. Laneige has partnered with numerous organizations and high-profile individuals to promote the Laneige Products. In 2024, Laneige partnered with Women's National Basketball Association (WNBA) team Phoenix Mercury as their official skin-care partner and hosted a "multi-faceted activation" at the WNBA All-Star Game. Laneige has also named several high-profile brand ambassadors such as Sydney Sweeney, Alix Earle, Charlie XCX, and social media influencer Nara Smith. Valentini Decl. at ¶ 14.

**The LANEIGE Trademarks**

19. Plaintiff has registered many of its trademarks with the U.S. Patent and Trademark Office on the Principal Register, including, but not limited to, the below registrations (the "LANEIGE Trademarks"). Valentini Decl. at ¶ 15.

| REGISTRATION NO. | TRADEMARK |
|---|---|
| 2,408,553 2,110,811 | LANEIGE |

4

| | |
|---|---|
| 4,801,638 | LANEIGE |
| 4,363,135 | LANEIGE |

20. The above U.S. registrations for the LANEIGE Trademarks are valid, subsisting, in full force and effect, and incontestable pursuant to 15 U.S.C. § 1065. Valentini Decl. at ¶ 16.

21. The LANEIGE Trademarks have been used exclusively and continuously by Plaintiff and have never been abandoned. At all relevant times, Plaintiff has been and still is the owner of all rights, title, and interest in the LANEIGE Trademarks, which have never been assigned, licensed, or otherwise transferred to Defendant. Valentini Decl. at ¶ 18.

22. Laneige Products typically include one or more LANEIGE Trademarks. The LANEIGE Trademarks are used to advertise, promote, and market Laneige Products. Valentini Decl. at ¶ 17. *See* **Exhibit 1** to the Valentini Decl., *see* **Exhibit 2** to the Valentini Decl., *see* **Exhibit 3** to the Valentini Decl.

23. Plaintiff has spent substantial time, money, and other resources in developing, advertising, and otherwise promoting the LANEIGE Trademarks and Laneige Products. For example, in 2024, Plaintiff partnered with Sephora and launched a Times Square takeover advertising campaign that took over Times Square and the nearby Sephora location and subway station in New York City. Valentini Decl. at ¶ 19.

**Defendant's Counterfeit Product**

24. Defendant advertised, offered for sale, and sold lip sleeping mask kits using the LANEIGE Trademarks (the "Counterfeit Product") on its Walmart store. The Counterfeit Product is a lip sleeping mask kit that includes four different flavors and is offered for sale and sold for $7.69. The product listing of Defendant's Counterfeit Product includes images with multiple

5

infringing and counterfeit reproductions of the LANEIGE Trademarks. Figure 2, Figure 3; [16-1] at pp. 188-191; Valentini Decl. at ¶¶ 20-22; **Exhibit 11** to the Valentini Decl.



*Figure 2*

25. Specifically, as shown in Figure 2 above, the product listing of Defendant's Counterfeit Product includes a first image that has five infringing and counterfeit reproductions of the LANEIGE Trademarks. [16-1] at pp. 188-191; Valentini Decl. at ¶ 21; **Exhibit 11** to the Valentini Decl.

26. Additionally, as shown in Figure 3 below, the product listing further includes a second image that has four infringing and counterfeit reproductions of the LANEIGE Trademarks. [16-1] at pp. 188-191; Valentini Decl. at ¶ 22; **Exhibit 11** to the Valentini Decl.



*Figure 3*

27. Giovanni Valentini is President and Secretary of Amorepacific US, Inc., the exclusive distributor and licensee of Amorepacific Corporation and Innisfree Corporation and is knowledgeable about or has access to business records concerning all aspects of the brand protection operation of Plaintiff including, Plaintiff's trademarks, other intellectual property, sales, on-line sales, advertising, marketing and media coverage. Valentini Decl. at ¶ 2.

28. Mr. Valentini supervises, and directs investigations related to internet-based infringement of Plaintiff's intellectual property, including the LANEIGE Trademarks. Valentini Decl. at ¶ 2.

29. The success of the Laneige brand has resulted in significant counterfeiting of the LANEIGE Trademarks. Consequently, Plaintiff has a worldwide anti-counterfeiting program and regularly investigates suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers. Valentini Decl. at ¶ 23.

30. As part of its worldwide anti-counterfeiting program, Plaintiff has continuously and actively enforced its trademark rights, including filing trademark infringement and counterfeiting lawsuits. Valentini Decl. at ¶ 24. *See* [1].

31. In 2024, Plaintiff launched an infringement/counterfeiting reporting website, amorepacificcounterfeitreport.com, where consumers can report infringing and counterfeit products. A link to the above-referenced website is located on Plaintiff's website us.laneige.com. Valentini Decl. at ¶ 25.

32. Under Mr. Valentini's direction, Defendant's e-commerce store operating under the seller alias identified as JUANHE Co.Ltd was analyzed and it was determined Defendant infringed Plaintiff's LANEIGE Trademarks by advertising, offering for sale, and selling the Counterfeit Product. Valentini Decl. at ¶ 20.

33. On September 25, 2024, Plaintiff's investigators ordered the Counterfeit Product from Defendant, entered an Illinois address (which was Plaintiff's counsel's address) as the shipping address, and paid for the Counterfeit Product. [16-1] at pp. 188-191; Nacht Decl. at ¶¶ 2-3; **Exhibit 1** to the Nacht Decl.; **Exhibit 2** to the Nacht Decl.; *See* [41] at ¶ 2.

34. Plaintiff's investigators received an order confirmation (Order No. 2000123-11599551) and subsequent e-mails confirming that the Counterfeit Product had shipped to the Illinois address. Nacht Decl. at ¶¶ 2-3; **Exhibit 2** to the Nacht Decl.; *see* [16-1] at pp. 188-191.

35. Plaintiff has not licensed or authorized Defendant to use the LANEIGE Trademarks, and Defendant is not an authorized retailer of genuine Laneige Products. Valentini Decl. at ¶¶ 18, 20.

36. On December 13, 2024, pursuant to the Temporary Restraining Order [22] (the "TRO"), Walmart provided Defendant's contact information, that the balance of Defendant's

8

Walmart account was $35,653.69, and confirmed that the account had been restrained. Nacht Decl. at ¶ 4.

**Defendant's Discovery Responses**

37. On December 30, 2024, pursuant to the TRO, Plaintiff served Defendant with Plaintiff's First Set of Interrogatories, First Set of Requests for Admissions, and First Set of Requests for Production on an expedited basis (collectively, "Plaintiff's First Discovery Requests"). Plaintiff's First Discovery Requests were due January 3, 2025. Nacht Decl. at ¶ 5.

38. On February 14, 2025, Plaintiff served Defendant with Plaintiff's Second Set of Interrogatories and Second Set of Requests for Production (collectively, "Plaintiff's Second Discovery Requests"). Plaintiff's Second Discovery Requests were due March 17, 2025. Nacht Decl. at ¶ 6.

39. On March 20, 2025, Defendant's counsel provided Plaintiff with Defendant's responses to Plaintiff's First Discovery Requests and Plaintiff's Second Discovery Requests. Additionally, Defendant's counsel provided 15 pages of document production, of which 6 pages consisted of the screenshot evidence originally filed as Plaintiff's Exhibit 2 to the Declaration of Giovanni Valentini [16]. Nacht Decl. at ¶ 7.

40. As part of the above-referenced document production, Defendant produced screenshots indicating that between March 5, 2022, and March 11, 2025, Defendant sold and accepted money for 29 units of Counterfeit Product for a revenue of $222.99. However, Defendant did not indicate whether those were the totality of Defendant's sales of the Counterfeit Product. The screenshots also did not indicate the identity or location of the purchasers, the shipping addresses, the status of the sales, or the status of the deliveries. Nacht Decl. at ¶ 8.

9

41. The above-referenced screenshots were only indicative of sales of one product (ID 6573170859); Defendant did not complete a search for other products that infringe the LANEIGE Trademarks or provide Plaintiff a list of its other products that would allow Plaintiff to investigate whether those products infringe the LANEIGE Trademarks. Nacht Decl. at ¶ 9.

42. Defendant did not provide an accounting for funds restrained in its Walmart account. Nacht Decl. at ¶ 10.

43. During discovery, Defendant provided Plaintiff with deficient responses and minimal document production, despite Plaintiff agreeing to extend the fact discovery deadline. Nacht Decl. at ¶ 11. *See* [56].

**The Vast Reach of Defendant's E-Commerce Store**

44. An August 2024 article by Walmart reported that the Walmart e-commerce platform achieved more than 30% sales growth the past four quarters and the number of e-commerce sales surpassed $100 billion in 2024. Nacht Decl. at ¶ 13.

45. According to the Fiscal Year 2021 U.S. Customs and Border Protection ("CBP") Intellectual Property Seizure Statistics Report, CBP made over 27,000 seizures of goods with intellectual property rights ("IPR") violations totaling over $3.3 billion, an increase of $2.0 billion from 2020. Nacht Decl. at ¶ 14.

Dated this 21st day of April 2025.	Respectfully submitted,

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Jennifer V. Nacht
Thomas J. Juettner
Greer, Burns & Crain, Ltd.
200 West Madison Street, Suite 2100
Chicago, Illinois 60606
312.360.0080 / 312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
jnacht@gbc.law
tjjuettner@gbc.law

*Counsel for Plaintiffs*
*Amorepacific Corporation and*
*Innisfree Corporation*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 21st day of April 2025, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system. The CM/ECF system will send a "Notice of E-Filing" to the attorneys of record in this case.

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Jennifer V. Nacht
Thomas J. Juettner
Greer, Burns & Crain, Ltd.
200 West Madison Street, Suite 2100
Chicago, Illinois 60606
312.360.0080 / 312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
jnacht@gbc.law
tjjuettner@gbc.law

*Counsel for Plaintiffs*
*Amorepacific Corporation and*
*Innisfree Corporation*
