**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Amorepacific Corp, *et al.*, | |
| *Plaintiffs*, | No. 24 CV 12417 |
| v. | Judge Lindsay C. Jenkins |
| Juanhe Co. Ltd., | |
| *Defendant*. | |

**MEMORANDUM OPINION AND ORDER**

Amorepacific Corporation filed this action against numerous e-commerce Defendants for federal trademark infringement and counterfeiting under 15 U.S.C. § 1114 (Count I) and false designation of origin under 15 U.S.C. § 1125(a) (Count II). [Dkt. 1.] Amorepacific now moves for summary judgment against the remaining Defendant, Juanhe Co. Ltd. Because Juanhe has presented no evidence that would allow a reasonable jury to find in its favor, the court grants the motion.

## I. Background

Amorepacific is a large beauty and cosmetics company, and owner of the beauty brand Laneige. [Dkt. 65, ¶¶ 2, 9.][1] Laneige is a skincare line that produces and sells serums, gels, creams, moisturizers, sunscreens, toners, eye masks, lotions, and lip products. [*Id.*, ¶ 9.] It is undisputed that Amorepacific registered the trademark LANEIGE; that it has a valid registration on the LANEIGE trademark; that it exclusively and continuously used and never abandoned the mark; and that it used the mark to advertise, promote, and market Laneige products. [*Id.*, ¶¶ 19-23.]

Defendant Juanhe operated an e-commerce store on Walmart.com that offered lip-sleeping-mask kits bearing the LANEIGE mark; the kit of four flavors was priced at $7.69, and the listing contained multiple infringing reproductions of the mark. [Dkt. 65, ¶¶ 24-26; Dkt. 61-11.] Prior to filing this lawsuit, Amorepacific ordered one of the counterfeit kits from Juanhe for shipment to an Illinois address. [*Id.*, ¶¶ 34.]

## II. Legal Standard

Summary judgment "is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Wade v. Ramos*, 26 F.4th 440, 446 (7th Cir. 2022) (quoting *Schacht v. Wis. Dept' of Corr.*, 175 F.3d 497, 504 (7th Cir. 1999)). A party opposing summary judgment must "set forth specific facts showing that there is a genuine issue for trial."

---

[1] Citations to docket filings generally refer to the electronic pagination provided by CM/ECF, which may not be consistent with page numbers in the underlying documents.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Summary judgment is proper if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Ellis v. CCA of Tennessee LLC*, 650 F.3d 640, 646 (7th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

### III. Analysis

Under the Lanham Act, a party may assert claims for trademark infringement, *see* 15 U.S.C. § 1114(1). To prevail on such a claim, a plaintiff must establish that (1) its mark is protectable and (2) the defendant's use of the mark is likely to cause confusion among consumers. *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 461 (7th Cir. 2000). Similarly, to prevail under its false designation of origin claim under § 1125(a), a plaintiff must show that: (1) the defendant used a false designation of origin or false representation in connection with its goods; (2) the defendant caused those goods to enter interstate commerce; and (3) consumers are likely to be confused by the false representation. *Web Printing Controls Co., Inc. v. Oxy-Dry Corp.*, 906 F.2d 1202, 1204 (7th Cir. 1990).

There is no dispute that the LANEIGE trademark is a valid and incontestable mark, that Amorepacific has the exclusive right to use the trademark in commerce, and that Juanhe used the mark without authorization to sell lip kits through Walmart.com. [Dkt. 65, ¶ 35; Dkt. 64 at 1 (conceding that the Walmart listing features the Laneige mark.)]

Juanhe does not respond to Amorepacific's analysis of "likelihood of confusion," but because it does dispute liability, the court briefly addresses this element. Courts employ a seven-factor test to determine likelihood of confusion: "(1) the similarity between the marks in appearance and suggestion; (2) the similarity of the products; (3) the area and manner of concurrent use; (4) the degree of care likely to be exercised by consumers; (5) the strength of the plaintiff's mark; (6) any evidence of actual confusion; and (7) the intent of the defendant to 'palm off' his product as that of another." *Sorensen v. WD-40 Co.*, 792 F.3d 712, 726 (7th Cir. 2015). No single factor is dispositive, but factors (1), (6), and (7) are especially important. *Id*. Whether likelihood of confusion exists is generally a question of fact, but may be resolved on summary judgment "if the evidence is so one-sided that there can be no doubt about how the question should be answered." *CAE, Inc. v. Clean Air Eng., Inc.*, 267 F.3d 660, 677 (7th Cir. 2001) (quoting *Door Sys., Inc. v. Pro-Line Door Sys., Inc.*, 83 F.3d 169, 173 (7th Cir. 1996)). Amorepacific provides sufficient evidence to clear that bar, leaving no doubt that a likelihood of confusion exists among consumers. [Dkt. 59 at 6-9.]

To be sure, Juanhe advertised, offered for sale, and sold colorful four pack lip kits that prominently display the LANEIGE mark. [Dkt. 65, ¶¶ 25-26]. Consumers who encountered Juanhe's storefront were likely to believe that they were the Laneige brand and that the products were genuine. Because Juanhe sold its four

flavor lip kit for around $7 through online retailer Walmart.com, and Amorepacific sells its kit through its own website as well as through retailers like Sephora, Kohl's and Amazon for about $20—a significantly higher price—the third and fourth factors are satisfied. [Dkt. 65, ¶¶ 10, 17, 25]. And there is no dispute that the Laneige mark is a mark that has been used in commerce in the United States for years. Given these undisputed facts, no reasonable jury looking at the factors weighed together would find in Juanhe's favor on this issue.

Although Juanhe does not dispute likelihood of confusion, it does argue that a genuine issue of material fact exists as to whether the products it ships are counterfeit given that Amorepacific "conducted only a visual inspection of the Walmart Product listing at issue," but "performed no visual or physical examination of the item actually shipped and received." [Dkt. 64 at 3 (arguing that Juanhe's business model "does not establish counterfeiting per se – resale of genuine products is lawful under the first sale doctrine, and there has been no showing of inferior quality or obvious brand knockoffs of shipped products).]

This argument is a non-starter. Juanhe cites no authority for the proposition that a physical examination of a product or showing of inferior quality is necessary to find infringement. This is likely because the statute requires only use of a mark in a way likely to confuse consumers and nothing more. *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 638 (7th Cir. 2001) ("To prevail on a Lanham Act claim, a plaintiff must establish that (1) her mark is protectable, and (2) the defendant's use of the mark is likely to cause confusion among consumers.") In this way, whatever item Juanhe shipped to consumers is irrelevant. Juanhe admits that Amorepacific has neither licensed nor authorized it to use the LANEIGE mark, and that it was not an authorized retailer of genuine Laneige products, so its argument fails. [Dkt. 65, ¶ 35.]

Since Amorepacific has established it is entitled to summary judgment on its trademark infringement and counterfeiting claim (Count I), it is also entitled to summary judgment on its false designation of origin claim (Count II). *CAE*, 267 F.3d at 673–74.

IV.  **Damages**

Amorepacific argues that Juanhe engaged in willful infringement, and it seeks an award of statutory damages of $150,000. Under § 1117(c)(1), a plaintiff in a case involving the use of a counterfeit mark may elect to recover an award of statutory damages in an amount between $1,000 and $200,000 "per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court orders just." 15 U.S.C. § 1117(c)(1). And "if the court finds that the use of the counterfeit mark was willful," the ceiling for statutory damages is raised to $2,000,000 per mark per type of goods or services. *Id.* § 1117(c)(2). Beyond providing a range of possible statutory damages awards, the statute provides no guidance on determining the award amount. But the analogous provision for statutory damages in copyright infringement cases, 17 U.S.C. § 504(c), is instructive. *See Chi-Boy Music v. Charlie*

3

*Club, Inc.*, 930 F.2d 1224, 1229 (7th Cir. 1991). In *Chi-Boy*, the Seventh Circuit explained that courts enjoy wide discretion in awarding statutory damages and may consider factors such as "the difficulty or impossibility of proving actual damages, the circumstances of the infringement, and the efficacy of the damages as a deterrent to future copyright infringement." *Id.* (quoting *F.E.L. Publ'ns v. Cath. Bishop of Ch*i., 754 F.2d 216, 219 (7th Cir. 1985)). In cases of willful infringement, courts may design the statutory damages award "to penalize the infringer and to deter future violations." *Id.* at 1230.

A defendant engages in willful infringement if he knew that his conduct constituted infringement or if he acted in reckless disregard of the owner's rights. *See Wildlife Exp. Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 511–12 (7th Cir. 1994); *see also Louis Vuitton S.A. v. Lee*, 875 F.2d 584, 590 (7th Cir. 1989) ("Willful blindness is knowledge enough.") Knowledge may be inferred from the infringer's conduct. *See Wildlife*, 18 F.3d at 511.

Juanhe argue that a minimal damages award is warranted because it derived *de minimis* revenue from the accused listings and because there is no evidence to suggest it "willfully engaged in counterfeiting." [Dkt. 64 at 2.] According to Juahne, its sales of the counterfeit product totaled $222 based on Walmart's sales data and screenshots Juahne produced in discovery. [Dkt. 65, ¶ 40.] Because this revenue figure is undisputed, it argues a large statutory award is neither necessary nor appropriate. [Dkt. 84 at 4.]

There is evidence of willfulness on the part of Juanhe. The undisputed evidence concerning the obviousness of the marks, and Juanhe's affirmative, unauthorized use of the marks in advertising Laneige lip kits demonstrates that it "suspect[ed] wrongdoing and deliberately fail[ed] to investigate," evidencing willful blindness. *Hard Rock Cafe Licensing Corp. v. Concession Servs., Inc.*, 955 F.2d 1143, 1149 (7th Cir. 1992). This finding justifies a meaningful damages award to penalize it and deter future violations.

It is undisputed that, through written discovery, Juanhe and Walmart produced some records (including screenshots) indicating sales of 29 units of product totaling $222, though there is no reason to conclude that written discovery revealed the totality of Juanhe's counterfeit product sales. [Dkt. 65, ¶ 40.] The material Juanhe provided did not indicate the identity or location of the purchasers, the shipping addresses, the status of the sales, or the status of the deliveries. [*Id.*] Nor did Juanhe provide an accounting for the funds restrained in its Walmart account.

Because Amorepacific has elected to recover statutory damages rather than actual damages, it need not prove actual losses. Even though the evidence tends to show a relatively small number of actual sales, there is no doubt that Juanhe had the ability to reach a worldwide customer base on Walmart.com when its storefront was operational. Juanhe notes that Walmart was its only storefront, that the lip kit was its only "identified" counterfeit product, and that its Walmart seller account was

4

terminated by Walmart in January 2025. [Dkt. 65, ¶ 40.] While mitigating, this does not outweigh Juanhe's willful infringement. See *Gonzales v. Transfer Techs., Inc.*, 301 F.3d 608, 609 (7th Cir. 2002) ("The fact that a criminal does not persist in committing crimes after he's indicted doesn't argue strongly in his favor.")

The proliferation of lower-priced counterfeit products can harm a trademark owner's brand and goodwill, and nationwide exposure makes Amorepacific's actual losses difficult to calculate, which only reinforces the need to award damages sufficient to deter similar conduct by Juanhe and others. Still, Amorepacific has not come forward with evidence to support damages in the range of $150,000, even considering the brand's popularity and industry recognition. There is no evidence that Juanhe operated a large-scale counterfeiting operation or that Amorepacific suffered significantly from these particular instances of infringement.

Considering the need for deterrence, the limited profits from a small number of known infringing sales, Juanhe's ability to reach a vast customer base, and ceased sales after January 2025, a $45,000 award is a sufficient statutory damages award.

## V. Attorney's Fees and Costs

Amorepacific seeks recovery of their attorney's fees and costs. As the prevailing party, it is entitled to costs. Fed. R. Civ. P. 54(d)(1). Attorney's fees are recoverable under 15 U.S.C. § 1117(a) "in exceptional cases," including when a defendant's conduct is willful. *BASF Corp. v. Old World Trading Co.*, 41 F.3d 1081, 1099 (7th Cir. 1994). In assessing damages under § 1117(a), courts "shall" award reasonable attorney's fees in cases involving the intentional use of a counterfeit mark, unless they find extenuating circumstances. 15 U.S.C. § 1117(b). "Willful blindness is sufficient to trigger the mandatory provisions of [§ 1117(b)]." *Hard Rock Cafe*, 955 F.2d at 1151. Attorney's fees are available when a plaintiff opts to receive statutory damages under 15 U.S.C. § 1117(c), as well. *See Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 111 (2d Cir. 2012). Juanhe does not identify any extenuating circumstances that would preclude the awarding of attorney's fees. Accordingly, reasonable attorney's fees and costs shall be awarded to Amorepacific.

## VI. Conclusion

For the foregoing reasons, the motion for summary judgment, dkt. 58, is granted.

Enter: 25 C 12417
Date: July 15, 2025

_____
Lindsay C. Jenkins